**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NEIL EMERY,

        *Plaintiff,*

   *v.*

ALLAN KORY, ROSCOMMON, COUNTY OF
and OGEMAW COUNTY STING TEAM

      *Defendants.*

_____/

CASE NO. 2:19-cv-11419
DISTRICT JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF No. 41, 43)

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants Allan Kory and County of Roscommon's Motion for Summary Judgment, (ECF No. 43), be **GRANTED**, and Defendant Ogemaw County Sting Team's Motion for Summary Judgment, (ECF No. 41), also be **GRANTED**.

## II.   REPORT

### A.   Introduction

On May 14, 2019, Plaintiff Neil Emery, who appears before the Court *pro se*, filed a complaint against Allan Kory, the County of Roscommon (the County), and the Ogemaw County Sting Team (STING), along with several other defendants, under 42 U.S.C. § 1983. (ECF No. 1, PageID.7.) Plaintiff alleged that the Defendants placed him in a state-created danger; Plaintiff avers that he signed a confidential informant agreement, his name was

1

subsequently used in a police report after the arrest of an individual Plaintiff informed the police about, and as a result, he was injured by an individual due to his cooperation with the police. (*Id*. at PageID.6-7.)

Plaintiff filed an amended complaint on June 11, 2019. (ECF No. 7.) An Order and Opinion dismissing several defendants was filed on July 15, 2019, (ECF No. 8), and all pretrial matters were assigned to the undersigned Magistrate Judge on July 16, 2019. (ECF No. 9.) Defendants filed answers to Plaintiff's complaint on October 4, 2019, (ECF No. 15), and November 26, 2019 (ECF No. 28).  Defendant STING filed a Motion for Summary Judgment on April 13, 2020. (ECF No. 41.) Defendants Kory and the County filed a Motion for Summary Judgment on April 30, 2020. (ECF No. 43.) Plaintiff filed a response to both Motions on July 10, 2020, (ECF No. 53), and Defendants filed replies on July 28, 2020, (ECF No. 51), and August 5, 2020. (ECF No. 52.) Below, I summarize the allegations set forth in the instant Motions as well as allegations in the amended complaint insofar as they correspond to the relief sought at this juncture.

     **B.**    **Factual Background**

According to Plaintiff, he was arrested on January 2, 2018 and taken to the Roscommon County Jail. (ECF No. 7, PageID.24.) At the jail, a "sting narcotics team officer," Defendant Kory, offered Plaintiff an opportunity to "work off his charge;" Plaintiff signed a "confidential informant agreement." (*Id*.) Plaintiff alleges that when he signed the agreement, he understood that his identity would be kept confidential, and he could "work off" his charge of possession of methamphetamine. (*Id*.)

Plaintiff next alleges that on February 26, 2018, while he was apparently released from the jail, he was at a friend's house when an individual named James Bailey "pulled a piece of paper from his pocket and said Emery you snitch[.]" (*Id.*) Plaintiff alleges that Bailey then punched Plaintiff with brass knuckles, breaking his jaw in two places and "caving the left side of his face in." (*Id.*) Plaintiff avers that this attack was the result of Defendant Kory including Plaintiff's name in the police report of someone named Robert Emery. (*Id.*)

In June 2018, Plaintiff was arrested again, this time for "delivery of meth." (*Id.*) Again, "sting narcotic officer" Defendant Kory approached Plaintiff to work as a confidential informant. (*Id.* at PageID.24-25.) Plaintiff informed Defendant Kory of the attack in February, and "Officer Allan Kory stated it was an accident and it wouldn't happen again." (*Id.* at PageID.25.) Plaintiff alleges that after agreeing to work as a confidential informant a second time, he was released from jail on bond so that he could work for "sting." (*Id.*) On July 23, Plaintiff avers that Defendant Kory asked him several questions about other people, then compiled all the information from Plaintiff and used it in "over 5 to 7" police reports, which caused Plaintiff "to be assaulted two more times in the county jail." (*Id.*) Plaintiff complains that his name was included in police reports concerning the arrest of the following individuals: Robert Emery, Jason Bracknet, Joe Sheperd, Kelsey Herbert, and Kim Pritz. (*Id.*) Plaintiff complains that his cooperation with Defendant Kory and the "sting" team was supposed to be confidential. (*Id.* at PageID.24-25.)

3

A document provided by Defendants Kory and the County, (ECF No. 43-2, PageID.215), details the interview between Defendant Kory and Plaintiff on July 24, 2018. In the notes under the title, "Interview with Neil Emery," Defendant Kory indicated that Plaintiff was aware of the following individuals who trafficked narcotics in the Roscommon County area: Joe Shepard, Samantha Moore, and Brandon Schroder. (*Id.*) Defendants Kory and the County argue that they had no evidence of Plaintiff serving as a "confidential informant" in an investigation by Defendant Kory. The following pages of the document include a form, titled "Confidential Source," which is signed by Plaintiff, under the following language, in part: "Any information you provide may be used in criminal or civil proceedings. The Department of State Police will use all reasonable means to protect your identity; however, this cannot be guaranteed." (ECF No. 43-3, PageID.219.) However, this "Confidential Source" document is dated April 14, 2010. (ECF No. 43-3, PageID.219.) Defendants Kory and the County point out that this 2010 agreement does not mention Defendant Kory or any other individual from the County. (ECF No. 52, PageID.295-296.)

## C.    Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary

judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### D.   Governing Law

#### 1.   Defendant STING and the Urban Cooperation Act

Defendant STING argues that it is not a juridical entity capable of being sued. Federal Rule of Civil Procedure 17(b)(3) provides that the determination of whether a party, who is not an individual or a corporation, has capacity to sue or be sued is governed by state law. Fed. R. Civ. P. 17(b)(3); *see, e.g., Trevino v. Teachout*, No. 16-14338, 2018 WL 732236, at *1 (E.D. Mich. February 6, 2018). Plaintiff does not assert, and research has not suggested, that Defendant STING operates as an individual or a corporation for purposes of Federal Rule of Civil Procedure 17(b). Defendant STING is a task force created

by an interlocal agreement between Crawford County, Oscoda County, Roscommon County, City of Au Gres, City of West Branch, Ogemaw County, and the Michigan Department of State Police under the Urban Cooperation Act (UCA), Mich. Comp. Laws 124.501 *et. seq*. (ECF No. 41-2, PageID.182 (Defendant STING's Exhibit 1, Copy of Interlocal Agreement).) The UCA provides:

> (1) An interlocal agreement may provide for a separate legal entity to administer or execute the agreement which may be a commission, board, or council constituted pursuant to the agreement. If an interlocal agreement does not expressly provide for a separate legal entity, then a separate legal entity shall not be created.
>
> . . .
>
> (2) . . . The separate legal entity may sue and be sued in its own name.

Mich. Comp. Laws 124.507(1), (2). The interlocal agreement that established Defendant STING specifies that:

> the participating entities do not intend by this agreement to establish this task force or its Executive board as a separate legal entity or administrative entity under Section 7(1) of the [UCA], MCL 124.507(1) and have not therefore provided for or otherwise established such an entity by the terms of this agreement.

(ECF No. 41-2, PageID.182 (Defendant STING's Exhibit 1, Copy of Interlocal Agreement.)) Defendant STING, relying on *Trevino v. Teachout*, argues that "STING is not a juridical entity capable of suing or being sued because its interlocal agreements did not expressly create a 'separate legal entity[,]'" and is therefore entitled to summary judgment. (EF No. 41, PageID.170.) This writer agrees.

In *Trevino v. Teachout*, one of the defendants—the Jackson Narcotics Enforcement Team (JNET)—was also established pursuant to the UCA and an interlocal agreement. *Trevino*, 2018 WL 732236, at *1. In language almost identical to the language in the agreement here, the interlocal agreement in *Trevino* also provided that "the participating entities do not intend by this agreement to establish this task force or its command board as a separate legal or administrative entity under [Mich. Comp. Laws 124.507(1).]" *Id*. The Court found that "the terms of the interlocal agreement expressly provide that JNET is not a separate legal entity[,]" and despite the plaintiff's argument that JNET behaved like a separate legal entity, "[the plaintiff] has not provided authority suggesting that this court may ignore the clear statutory and contractual language to the contrary." *Id*. The Court dismissed JNET from the action. *Id*.

*Trevino* is persuasive. Likewise, here, it appears that the operative statute and agreement which established Defendant STING expressly specified that it is not a separate legal entity capable or suing or being sued. As in *Trevino*, here, Plaintiff has not presented authority which would undermine this finding. As such, I recommend that Defendant STING's Motion be granted.

### 2. Defendant Kory

#### i. State-Created Danger Theory of Liability

Plaintiff's claim against Defendant Kory is rooted in the state-created danger doctrine. "The Due Process Clause of the Fourteenth Amendment does not impose upon the state an affirmative duty to protect its citizens against private acts of violence, but rather, places limitations on affirmative state action that denies life, liberty, or property

without due process of law." *Millinder v. Hudgins*, 421 F. Supp. 3d 549, 556-557 (W.D. Tenn. 2019) (quoting *Barber v. Overton*, 496 F.3d 449, 453 (6th Cir. 2007)). "The state created danger doctrine exists as an exception to this general rule." *Millinder*, 421 F. Supp. 3d at 557. "'The state-created danger doctrine allows plaintiffs to bring due process claims under § 1983 for harms caused by private actors—an anomaly because neither the Fourteenth Amendment nor § 1983 regulates private actors.'" *Id*. (quoting *Estate of Romain v. City of Grosse Pointe Farms*, 935 F.3d 485, 491 (6th Cir. 2019)). The state-created danger doctrine requires a "demanding standard" of proof. *Id*. (quoting *Estate of Romain*, 935 F.3d at 492).

Defendant Kory first argues, relying on *Summar on Behalf of Summar v. Bennett*, 157 F.3d 1054, 1056-1058 (6th Cir. 1998), that to the extent Plaintiff was a confidential informant, he consented to do so and did so voluntarily. (ECF No. 43, PageID.207-210.) Defendant Kory also argues, though, that a confidential informant waiver concerning Plaintiff does not exist; the only confidential informant waiver Defendant Kory has knowledge of is from 2010—but Defendant Kory argues that the 2010 agreement does not involve Kory or any other individual from the County. (*Id*. at PageID.209.) Finally, Defendant Kory argues that Plaintiff has failed to provide any evidence that Defendant Kory had any knowledge of threat of harm against Plaintiff based on his alleged confidential informant status. (*Id*. at PageID.210.)

In *Summar*, a confidential informant was killed after purchasing drugs in cooperation with the police. 157 F.3d at 1056. The Sixth Circuit affirmed the lower court's determination that there was no violation of due process when the officer revealed the

informant's name: "[the informant] voluntarily elected to serve as a confidential information, despite being advised that he would have to testify and reveal his status as an agent of the police." *Id*. at 1058. The confidential informant agreement in that case included the informant's "understanding that his status as a confidential informant would be conditioned upon his willingness to wear a recording device, including a body wire, and to testify in open court." *Id*. at 1056.[1]

Plaintiff argues that the present case is distinguishable from *Summar* because Plaintiff here was not "advised" that he would have to "testify and reveal his status" as an informant. (ECF No. 53, PageID.309.) Indeed, this case in more analogous to *Nelson v. City of Madison Heights*, 845 F.3d 695 (6th Cir. 2017) in that regard—the Plaintiff there signed a similar document with the warning that the department would make every attempt to keep the informant confidential but could not guarantee it. *Nelson v. City of Madison Heights*, 845 F.3d 695, 698 (6th Cir. 2017).

---

[1] *C.f. Nelson v. City of Madison Heights*, 845 F.3d 695 (6th Cir. 2017) (a confidential informant signed an agreement with language nearly identical to that in the present case; it read: "[t]he Oakland County sheriff Department will use all reasonable means to protect your identity; however, this cannot be guaranteed." *Nelson*, 845 F.3d at 698. The informant contacted an individual, Raqib, through her phone to purchase drugs in cooperation with the police; when the police arrested Raqib, the officer told the him that he had been the one to order drugs over the phone. *Id*. The informant's body was later found after an interaction with two of Raqib's associates. *Id*. at 699. The Sixth Circuit held that *Nelson* was distinguishable from *Summar* because "[n]o one advised [the informant] that she would have to, nor did she agree to, 'testify and reveal [her] status.'" *Id*. at 700. There, "unlike the facts in *Summar*, [the informant's] voluntary election to serve as a confidential informant did not come with conditions that would have put her on notice that her identity would eventually become public under the agreement." *Id*. The Court found that the officer acted with deliberate indifference when he disclosed the informant's identity, and concluded that the a jury could have reasonably found, under the state created danger theory of liability, that the officer "engaged in affirmative acts that increased [the informant's] risk of exposure to private acts of violence, which deprived [her] of her clearly established Due Process right to personal security and bodily integrity." *Id*. at 703.)

Unfortunately for Plaintiff, though, the language of the agreement is where the similarities seem to end between the present case and *Nelson*. While *Nelson* may be closer factually to this case regarding the warning of a potentially revealed informant status, the strength of Plaintiff's claims differs from those in *Nelson* because they are not supported by evidence in the record here. Plaintiff provides hospital records after he was attacked and incident reports from within the jail, and outside of it, regarding fights with other inmates and individuals. (ECF No. 53, PageID.315-329.) But none of this evidence shows any connection to Defendant Kory, or even to Plaintiff's alleged involvement as an informant. Plaintiff does not provide any evidence that the alleged police report which includes his name as an informant was the cause of the later attack. In fact, this writer was unable to identify a police report containing Plaintiff's name in the record at all. Defendant Kory argues that his department does not have a confidential informant agreement signed by Plaintiff and Defendant Kory or any other individual employed by the County. Indeed, the only confidential informant form in the record is dated April 14, 2010. (ECF No. 43-3, PageID.219.) Plaintiff has failed to establish how this 2010 form is connected to a police report or the later attack on him.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson*, 477 U.S. at 248. Thus, based on a review of the record, I suggest that the evidence presented does not establish a genuine issue of material fact as to whether Defendant Kory's actions or omissions created or increased a specific danger to Plaintiff. Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at

248. Based on the evidence presented here, I suggest that it would not support a verdict in Plaintiff's favor from a reasonable jury. I suggest granting Defendant Kory's Motion on these grounds.

### ii.      Qualified Immunity

Defendant Kory moves alternatively for summary judgment on the grounds that he is protected by qualified immunity. (ECF No. 43, PageID.207-210.) In the addition to the above analysis recommending summary judgment, or in the alternative, if a reviewing judge finds there is evidence to support a genuine issue of material fact regarding the state-created danger theory, I further suggest that Defendant Kory is also protected by qualified immunity.

"'The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Millinder*, 421 F. Supp. 3d at 560-561 (quoting *Wood v. Moss*, 572 U.S. 744, 757 (2014)). The Sixth Circuit has "told lower courts that they must address the initial inquiry before reaching the clearly established question." *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (quotation marks omitted).

Regarding whether Defendant Kory violated a "statutory or constitutional right," *Millinder*, 421 F. Supp. 3d at 560-561, the Sixth Circuit has held that "when the State 'cause[s] or greatly increase[s] the risk of harm to its citizens . . . through its own affirmative acts,' it has established a 'special danger' and a duty to protect its citizens from that risk." *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (quoting *Kallstrom v. City*

*of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). As previously discussed, Plaintiff has not established that Defendant Kory caused or greatly increased Plaintiff's risk of harm through his affirmative acts; as such, this element is not satisfied for purposes of defeating Defendant Kory's invocation of qualified immunity. *See also Nichols v. Fernandez*, 686 F. App'x 532, 534-535 (9th Cir. 2017) (holding that a police officer did not violate the state-created danger doctrine by including an informant's name in a police report).

For thoroughness, however, I will also consider the second element—whether the right was clearly established at the time of the conduct in question. "Clearly established" means that the right's "contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Millinder*, 421 F. Supp. 3d at 561 (quoting *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019)). Notably, "when this court can uncover only some generally applicable principle, its specific application to the relevant controversy must again have been 'clearly foreshadowed by applicable direct authority.'" *Summar*, 157 F. 3d at 1058 (quoting *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992)). I suggest that even if Defendant Kory's actions did place Plaintiff in an increased risk of harm, the right was not so clearly established that Defendant Kory should be held liable.

Research has not revealed a binding, specific case that provides a rule against the inclusion of informant names in a police report. Plaintiff relies on *Nelson v. City of Madison Heights*, 845 F.3d 695 (6th Cir. 2017); however, that case concerned a police officer's divulgence of an informant's name, in person, to the suspect who was being arrested based on the informant's information. *Id*. at 699-700. The present issue concerns the alleged use

13

of an informant name in a police report. As in *Przybysz v. City of Toledo*, 746 Fed. App'x 480, 484 (6th Cir. 2018), "[b]ecause there is no legal authority on point (let alone clear legal authority), [Plaintiff]'s claim fails to clear this hurdle"—the "hurdle" being a clearly established right. As such, this element is not satisfied, either, and I suggest that Defendant Kory is protected by qualified immunity.

### 3.        Defendant County of Roscommon

Finally, Defendant County of Roscommon (the County) also moves for summary judgment under *Monell*. Indeed, municipal entities like the County cannot be held vicariously liable under § 1983 for the acts of their agents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-692 (1978). Instead, to sue such municipalities, "a plaintiff must prove that the deprivation occurred pursuant to a municipal 'policy or custom.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994)). A "policy" can be demonstrated by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell*, 436 U.S. at 690. A "custom," by contrast, is a practice "has not been formally approved by an appropriate decisionmaker [but] may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Co. Comm'rs of Bryan Co. v. Brown*, 520 U.S. 397, 404 (1997).

"One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Harvey v. Campbell Co.*, 453 F. App'x 557, 562 (6th Cir. 2011) (citation omitted). "To succeed on a failure-to-train claim, a plaintiff must prove the

14

following: (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Thames v. City of Westland*, 310 F. Supp. 3d 783, 800 (E.D. Mich. 2018). But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The municipal policymakers must have notice of gaps in their training programs such that the failure to remedy them demonstrates deliberate indifference. *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citation omitted).

In his complaint, Plaintiff does not specify or allege a policy or custom on the part of the County. In his response to the County's Motion, Plaintiff argues that the County is "liable for failing to take steps to protect Plaintiff while he was incarcerated at the county jail and [the County] and its employees knew Plaintiff served as a [sic] informant for [Kory]." (ECF No. 53, PageID.310-311.) He further argues that "[a] county can be held liable, pursuant to § 1983, for acts of the county sheriff or other jail personnel regarding unconstitutional conditions inside of a county jail." (*Id.*) Neither do these allegations set forth a policy or custom by the County. Therefore, I suggest that the County is protected by *Monell*, and the County's Motion should be granted.

### E.    Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** Defendants Allan Kory and County of Roscommon's Motion for Summary Judgment, (ECF No. 43), be

**GRANTED**, and Defendant Ogemaw County Sting Team's Motion for Summary Judgment, (ECF No. 41), also be **GRANTED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  September 22, 2020                    S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge


## **CERTIFICATION**

     I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Neil Emery #443938 at Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048.

Date: September 22, 2020                    By s/ Kristen Castaneda
                                            Case Manager